**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **16-05655-jw**

## ORDER DISMISSING CASE

The relief set forth on the following pages, for a total of 22 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**04/21/2017**



US Bankruptcy Judge
District of South Carolina

Entered: 04/21/2017

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: | |
| ERIC JAMES DE WEERD AND DANIELLE MARIE SIRIANNI-DE WEERD | Case No. 16-05655-jw<br>Chapter 11 |
| Debtor. | |

## <u>ORDER DISMISSING CASE</u>

This matter comes before the Court on the Motion of the United States Trustee ("UST") to Dismiss or Convert Case filed on February 28, 2017 (the "UST Motion to Dismiss or Convert"), the Joinder in UST Motion to Dismiss and Motion to Dismiss with Prejudice filed by Moving with Moxie, Inc. and AMS of Hilton Head Realty, LLC (the "First Movants") on April 6, 2017 (the "Motion to Dismiss with Prejudice") along with a request for an emergency hearing, and the Joinder in UST Motion to Dismiss and Motion to Dismiss with Prejudice[1] filed by Robert Peterson Jr., Vasilla Peterson, Nick Bouras, Mary Beth Browder, RVNB Holdings, Inc., All My Sons Business Development Corp., and Moving with Moxie, Inc. (the "Second Movants") on April 12, 2017 (the "Defendants' Motion to Dismiss with Prejudice," and, together with the UST Motion to Dismiss or Convert and the Motion to Dismiss with Prejudice, the "Motions"). [2]

---

[1]     The Court notes that in this motion, the Second Movants primarily argue for the dismissal of the adversary proceeding in Adv. Pro. No. 17-80030-jw as part of the case dismissal.

[2]     Moving with Moxie, Inc., AMS of Hilton Head Realty, LLC, Robert Peterson Jr., Vasilla Peterson, Nick Bouras, Mary Beth Browder, RVNB Holdings, Inc., and All My Sons Business Development Corp. will hereinafter be collectively referred to as "Litigating Parties."

The UST Motion to Dismiss or Convert sought the dismissal or conversion of the Debtors' case pursuant to 11 U.S.C. § 1112(b)(1),[3] and § 1112(b)(4)(A), (B),[4] (E), (F), and (K).[5] The Motions to Dismiss with Prejudice filed by the Litigating Parties also asserted that the Debtors' case was filed in bad faith, that the Debtors willfully failed to comply with orders of the Court, and that the Debtors appeared to be using the services of an attorney to prepare and "ghostwrite" pleadings in an adversary proceedings filed in the Bankruptcy Court without retaining him in the bankruptcy case or disclosing his representation to the Court or other parties in interest. Accordingly, the Litigating Parties sought dismissal of the case, rather than conversion, with prejudice for a period of 180 days or one year.

The deadline for the Debtors to object to the UST Motion to Dismiss or Convert was set for March 21, 2017. Despite proper service of the UST Motion to Dismiss or Convert on parties in interest, including the Debtors who were served in person, via e-mail, and regular mail, the Debtors failed to respond or object to the UST Motion to Dismiss or Convert. As to the Motion to Dismiss with Prejudice, the Court granted an expedited hearing on the matter to be held on the same date as the UST Motion to Dismiss or Convert and set the deadline for objections or responses as April 12, 2017. On that date, the Debtors filed a Response to the Motion to Dismiss with Prejudice and the Defendants' Motion to Dismiss with Prejudice disputing some of the assertions raised therein regarding the "ghostwriting" of documents by counsel.

---

[3]         Further references to the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) shall be by section number only.

[4]         The UST also alleges that the Debtors have grossly mismanaged their estate, as cause for the dismissal or conversion of the case. Based upon the findings and conclusions stated herein, it is not necessary for the Court to consider this argument at this time.

[5]         By the commencement of the hearing on the Motions, however, the Debtors had become current on the outstanding UST quarterly fees for the fourth quarter of 2016, albeit untimely; thus, mooting the argument the UST raised that "cause" existed under § 1112(b)(4)(K).

An evidentiary hearing on the Motions took place on April 13, 2017.  Mr. De Weerd,

individually and on behalf of Ms. De Weerd, as well as counsel for the UST and the Litigating

Parties, and counsel for Brand Banking Bank were all present.  At that hearing, the UST proffered

the testimony of Julie Smoak, Bankruptcy Auditor for the Columbia Field Office of the United

States Trustee and introduced a total of 44 exhibits into evidence, without any objections by any

party.

This is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction under

28 U.S.C. §§ 1334 and 157(a).  Based upon the Motions, along with the response filed by the

Debtors to the Motion to Dismiss with Prejudice and the Defendants' Motion to Dismiss with

Prejudice, the filings in this case, applicable statutory and case law, the evidence and proffered

testimony presented at the hearing, and the arguments of counsel and Mr. De Weerd, the Court

makes the following findings of fact and conclusions of law.[6]

### **FINDINGS OF FACT**

1.      The Debtors filed for relief pursuant to Chapter 11 of the United States Bankruptcy

Code on November 7, 2016.  Since the commencement of the bankruptcy case, the Debtors have

represented themselves *pro se*.

2.      The Debtors remain in possession of their assets and continue to manage them as

debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  No trustee or examiner

has been appointed in this Chapter 11 case, and sufficient interest was not expressed to form an

Official Committee of Unsecured Creditors.

3.      An initial debtor interview (the "IDI") was held telephonically on November 30,

2016, at which time the Office of the UST advised the Debtors of various deficiencies and

---

[6]      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

explained to them the various administrative requirements of Chapter 11 debtors.  Among other things, the following were the requirements discussed with the Debtors at the IDI: (a) the requirement to file monthly operating reports and an explanations of the forms to be used and information to be included, (b) the requirement to file Rule 2015.3 reports at least seven days prior to the first meeting of creditors, (c) the necessity to retain professionals and seek the approval of their employment, and (d) the requirement to pay quarterly UST fees.

4.      The UST held an initial meeting of creditors pursuant to 11 U.S.C. § 341 on December 2, 2016.  The meeting of creditors, however, was continued to December 27, 2016, and again to January 27, 2017, given various deficiencies that the UST announced at the meeting of creditors, including the Debtors' failure to bring proper social security identification with them.

5.      On December 5, 2016, the Court held a status hearing.  The Debtors appeared telephonically and indicated on the record that while they were representing themselves *pro se* at that time, they were hoping to retain counsel by the end of the month.  The status conference was continued to January 4, 2017.

6.      On December 28, 2016, the UST filed a Motion for Status Conference which outlined various deficiencies and requested that the Debtors appear before the Court to establish a timetable and conditions for the performance of the Debtors' duties in this case and provide a status as to the UST's requests previously made.  At the hearing on the Motion for Status Conference on January 4, 2017, the Debtors appeared, again representing themselves *pro se*, and indicated that they should be in a position to retain counsel by January 9, 2017.  The Debtors and the UST then met to establish a consensual timeline, which was memorialized in an Order Regarding Status Conference and Establishing Deadlines which was entered on January 5, 2017 (the "Order Establishing Deadlines").

7.      According to the Order Establishing Deadlines, the UST could file an affidavit of delinquency triggering the dismissal or conversion of the case without further notice if any of the following deadlines were not met: (a) by January 11, 2017, the Debtors were to file a complete and accurate statement of financial affairs, their respective Certificates of Credit Counseling, and the monthly operating report for the month of November 2016 in the proper approved form; (b) by no later than January 20, 2017, the Debtors had to file with the Court the monthly operating report for the month of December 2017; and (c) by January 24, 2017, the Debtors had to file Form B26 for each entity that the Debtors own or owned an interest in greater than 20%, as required by Bankruptcy Rule 2015.3.  To the extent that the other requirements and deadlines set forth in the Order Establishing Deadlines were not met, the order provided that the UST could file a further motion seeking relief as she deemed appropriate, including the dismissal or conversion of the case.

**Schedules and Statement of Financial Affairs**

8.      The schedules and statement of financial affairs were due on November 21, 2016. On November 28, 2016, the Debtors filed Schedules A through I (the "Original Schedules").  On December 21, 2016, the Debtors filed Amended Schedules A through I (the "Amended Schedules"), but the Court entered a notice of deficiency because the amendments were not signed by the Debtors.[7]  On December 21, 2016, the Debtors also filed Schedule J, the Chapter 11 Statement of Current Monthly Income, and the List of Creditors with the 20 Largest Unsecured Claims, along with other reports that are required by the UST Chapter 11 Guidelines.

9.      On January 11, 2017, the Debtors filed their Statement of Financial Affairs.  Item 27 of the Statement of Financial Affairs, which requires a debtor to disclose any business in which the debtor owns or owned an interest or was a member or officer or director within the four (4)

---

[7]      To date, the deficiency has not been cured.

years prior to the bankruptcy filing, listed the Debtors' involvement in AMS of Hilton Head Realty and Moving with Moxie, Inc.  The Statement of Financial Affairs, however, failed to disclose Mr. De Weerd's interest in other companies, such as Outdoor 24, Hardeeville Storage, LLC, and Cultural Campaign Consulting, LLC, interest which mere mentioned in the Amended Schedules filed on December 21, 2016.

10.     On December 29, 2016, the Court entered an order requiring the Debtors to (a) serve the Notice of Chapter 11 Bankruptcy Case as well as other documents on creditors that were not listed at the time the petition was filed, and (b) file Statement of Change for the Amended Schedules (the "December 29 Order").  To date, the case docket does not reflect any Certificate of Service or Statement of Change indicating that the Debtors complied with the terms of the December 29 Order.

11.     The Original Schedules reflected that the Debtors own four properties of real estate: (a) 4 McIntosh Road, Hilton Head (estimated value of $1,088,545.00) (the "Residence"); (b) 19 Wax Myrtle Court, Hilton Head (estimated value of $391,563.00) ("Wax Myrtle Property"); (c) 1815 W. 47th St., Cleveland, Ohio (estimated value of $179,900) ("Ohio Property"); and (d) 101 Woodhaven Lane, #120, Hilton Head (estimated value of $35,001.00) ("Woodhaven Property").

12.     At the IDI and initial meeting of creditors, the Debtors testified that the Ohio Property and Woodhaven Property were actually titled in the name of Cultural Campaign Consulting, LLC, which is wholly owned by the Debtors.  Accordingly, the UST requested that the Original Schedules be amended to reflect assets that were owned by the Debtors directly and not the LLC, which was done in the Amended Schedules.  The Rule 2015.3 statements that were provided to the UST also reflected that Cultural Campaign Consulting, LLC owned the Ohio Property and Woodhaven Property.

13.     According to the Debtors' testimony at the 341 meeting and the rent-rolls provided to the UST, both the Woodhaven Property and the Ohio Property are rented and generate combined net income of approximately $650 a month.

14.     According to the Amended Schedules, Ally Bank and Brand Bank have mortgages encumbering the Residence in the amounts of $465,522.00 and $122,394.00, respectively; Wells Fargo and Regions Bank have mortgages encumbering the Wax Myrtle Property in the amounts of $279,000 and $104,000, respectively; Seterus and Bank of America have mortgages encumbering the Ohio Property in the amounts of $84,750.00 and $27,280.00, respectively; and SunTrust has a mortgage encumbering the Woodhaven Property in the amount of $42,504.00.

15.     On January 11, 2017, the Debtors filed with the Court their Certificate of Credit Counseling which certified that they had taken the course on January 11, 2017 – the same date as the deadlines in the Order Establishing Deadlines by which they had to file those certificates.

16.     On January 25, 2017, the Debtors also provided counsel for the UST with various documents that had to be provided or filed by January 24, 2017, or required in the Order Establishing Deadlines.  Among other documents, the Debtors provided B26 Reports pursuant to Rule 2015.3 for Cultural Campaign Consulting, LLC and Outdoor 24.  The Rule 2015.3 reports, however, did not provide complete information, and the reports were never filed with the Court.

17.     On January 26, 2017, the UST e-mailed the Debtors a list of some outstanding items that needed to be taken care of as required by the Order Establishing Deadlines.  The following items from that list remained outstanding, among other things:

   a.   Amend Statement of Financial Affair at item #27 to list all entities that the Debtors have an interest in or that were closed within the last 4 years.

   b.   Identify whether assets listed in item 40 (Machinery, fixtures, equipment, supplies) and 41 (Inventory) of Schedule B are owned by the Debtors personally or one of the entities in which the Debtors own an interest;

7

    c.   Provide to the UST documentation reflecting why Preston Hicks, listed on Schedule E as being owed $30,000, should be deemed to be a priority claimant instead of a non-priority unsecured creditor;

    d.   Amend Schedule F to properly include all creditors, add the total of unsecured debts on line 6.j, and take into account all creditors instead of handwriting and adding various annotations to the side of the document;

    e.   Amend Schedule F to add Anthony Page;

    f.   Provide the UST with documentation showing the legitimacy of the debts listed on Schedule F to Femo Group/MosquitoNix, AMS of Hilton Head Realty, Inc., and Moving with Moxie, Inc., all in the amount of $200,000;

    g.   Amend Schedule G to include any executory contracts or leases instead of co-debtors on various debts, which need to be moved to Schedule H;

    h.   Amend Schedule H to include all guarantors on other debts that the Debtors are also responsible for and which should be listed on Schedule H;

    i.   Amend Schedule I to provide a break-down of the net income from rental property and from operating a business;

    j.   File with the Court Form B26 for each entity that the Debtors own an interest in, as required pursuant to Bankruptcy Rule 2015.3, and properly amend the ones that were provided to the UST prior to filing with the Court.

    k.   Comply with the provisions of the December 29 Order.

**Monthly Operating Reports**

18.    The first monthly operating report for the period from November 7, 2016 to November 30, 2016, was due on December 20, 2016, but it was not filed until January 11, 2017. Moreover, because the wrong form was used and because of various deficiencies in the reporting, the UST requested that it be amended.

19.    The amended November 2016 monthly operating report and the December 2016 operating report were filed on January 30, 2017. Due to various inconsistencies and deficiencies in the reports, the UST requested that the December 2016 monthly operating report be amended

by no later than February 9, 2017.  The Debtors did provide an amended December report to the UST, but did not file it with the Court.  The amended December monthly operating report, however, continued to have deficiencies and inconsistencies which were brought to the Debtor's attention in an email from Mrs. Smoak to the Debtors dated February 12, 2017.

20.     The Debtors' January 2017 monthly operating report was filed on February 21, 2017.  Upon a review of the January report, the UST informed the Debtor that it appeared that they continued to use their non-bankruptcy estate business accounts for personal expenses, which the Debtors were advised not to do on several occasions at the IDI and the meetings of creditors.

21.     Finally, the Debtors' February 2017 monthly operating report was filed on March 21, 2017.  The report was plagued by many of the same inconsistencies and issues that were highlighted for the Debtors with respect to the prior reports.  Moreover, while the February 2017 reflects a profit of $2,701.02, simple math based on the figures reported indicate that the Debtors actually suffered a loss of $2,701.02 during that month.

22.     Based on the figures reported in the monthly operating reports from November 2016 through February 2017, the Debtors suffered a cumulative loss of $1,708.59.  Moreover, during those months, there appears to be no mortgage payments or some mortgage payments of less than $500, but it is not clear to whom they were made.

**Motions for Relief from Stay**

23.     On December 16, 2016, Ally Bank filed a motion seeking relief from stay on the Residence, indicating that the Debtors failed to make regular mortgage payments since September 1, 2015.  The hearing on the Ally Bank's motion for relief from stay was continued until February 1, 2017.  On January 26, 2017, Ally Bank filed a Certification of Default regarding the Motion for Relief from Stay, and an order granting the relief sought was entered on January 26, 2017.

24.     On January 26, 2017, the Debtors filed a motion to reconsider the Order granting relief from stay as to their Residence, which was denied on March 16, 2017.

25.     On January 3, 2017, SunTrust Mortgage, Inc. filed a motion seeking relief from stay as to the Woodhaven Property.

26.     On January 24, 2017, SunTrust Mortgage, Inc. filed a Certification of Default regarding the Motion for Relief from Stay, and an order granting the relief sought was entered on January 25, 2017.

27.     On February 3, 2017, Federal National Mortgage Association filed a motion for relief from stay as to the Ohio Property.

28.     On February 22, 2017, Federal National Mortgage Association filed a Certification of Default regarding the Motion for Relief from Stay, and an order granting the relief sought was entered on February 22, 2017.

**Retention of Counsel and Ownership of Ohio Property**

29.     Since the beginning of the case, the Debtors have indicated that it was their intention to retain counsel, but that they have been unable to do so given the lack of funds to pay a retainer.

30.     At status conferences before the Court and at the meeting of creditors, the Debtors indicated that it was their intention to hire Truett Nettles, Esq. of the Finkel Law firm, who has represented the Debtors in litigation concerning their involvement with a franchise, to represent them in the bankruptcy proceeding.

31.     The Finkel Law Firm, however, is counsel of record for Federal National Mortgage Association ("FNMA"), which sought, and received approval for, the relief from stay for the Ohio Property.  At the hearing on the Motions, Truett Nettles of the Finkel Law Firm was present.  While

the Debtors explained that he was not there to represent them at that hearing, Mr. Nettles did indicate that if the case was dismissed, he may represent the Debtors once they refiled.  During Mr. De Weerd's testimony, however, the Debtor indicated that he had paid Mr. Nettles approximately $3,000 in fees as an advance for attorney services and that the amount was paid from one of the LLCs in which the Debtors hold an interest.

32.    On January 24, 2017, the Debtors wrote a letter to the Court requesting informal permission to sell the Ohio Property, which they claimed was owned by one of their LLCs, so that the equity in the property could be used to pay the retainer for bankruptcy counsel (the "Motion for Sale").  The Debtors further indicated in the letter that there was a pending sale on the property but that they were having issues with the title company to clear title.  On February 27, 2017, the Debtors filed the Motion for Sale with the Court, which was scheduled to be heard on an emergency basis on March 1, 2017.

33.    The UST objected to the proposed sale of the Ohio property on the grounds that there were numerous deficiencies in the sale motion and, among other things, the Debtors had failed to inform the Court and other parties in interest and had actually misrepresented the fact that the property was titled in their individual name – not in the LLC's.  The Debtors were given an opportunity to immediately amend the Motion to address the deficiencies raised, and the hearing was continued to March 9, 2017.  However, due to the Debtors' failure to take any further action with respect to the proposed sale or file any amended motion as directed by the Court, an order denying the Motion for Sale was entered on March 7, 2017.

34.    Subsequently, on March 23, 2017, the Debtors filed an amended Motion for Sale and sought an expedited hearing on same, which was heard on the same day as the hearing on the Motions.  The UST and FNMA, by its counsel (the Finkel Law Firm), objected to the amended

Motion for Sale and appeared at the hearing on the motion which was also held on April 12, 2017.

**UST Quarterly Fees**

35.     The UST quarterly fees for the fourth quarter of 2016 were due by no later January

31, 2017.  The Debtors, however, did not remit payment on those fees until the eve of the hearing

on the Motions.

## CONCLUSIONS OF LAW

The Notice of the UST's Motion to Dismiss or Convert clearly provided that any response

or objection had to be filed by no later than March 21, 2017.  The UST properly served the Debtors

with her Motion to Dismiss or Convert; in fact, the evidence introduced at the hearing reflects that

the UST emailed the Notice and a copy of the Motion upon filing to the Debtors, mailed them a

copy through regular U.S. mail, and also presented them a copy in person at the hearing on the

Motion for Sale that took place on March 1, 2017.  Despite proper service, the Debtors failed to

object or respond to the UST's Motion to Dismiss or Convert.  On that basis, the Court can dismiss

or convert the case.  The Court, however, also finds that "cause" exists under § 1112(b)(1) for the

dismissal or conversion of the case and addresses these in turn below.

The UST and the Litigating Parties seek the dismissal of this case pursuant to § 1112(b)(1).

Section 1112(b)(1) provides as follows:

> Except as provided in paragraph (2) and subsection (c), on request of a party in
> interest, and after notice and a hearing, the court **shall** convert a case under this
> chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is
> in the best interests of creditors and the estate, for cause unless the court determines
> that the appointment under section 1104(a) of a trustee or an examiner is in the best
> interest of the creditors and the estate.  (emphasis added).

As a party seeking an order dismissing Debtors' Chapter 11 case, the UST bears the burden

to establish "cause."  See In re Congaree Triton Acquisitions, LLC, 492 B.R. 843, 850 (Bankr.

D.S.C. 2012); In re Ashley Oaks Development, Corp., 458 B.R. 280, 283 (Bankr. D.S.C. 2011)

(citing In re Landmark Atlantic Hess Farms, LLC, 448 B.R. 707 (Bankr. D.Md. 2011)).  Section

1112(b)(4) sets forth a non-exhaustive list of sixteen examples of cause sufficient to warrant

conversion or dismissal.  See In re Congaree Triton Acquisitions, LLC, 492 B.R. at 850 (citing In

re Draiman, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011)) ("'Cause' is defined in § 1112(b)(4) with

a list of examples, but that list is viewed as illustrative.").

Upon establishment of cause by a party in interest, the dismissal or conversion of a case is

mandatory, unless the debtor can establish evidence that satisfies the specific requirements set

forth in § 1112(b)(2).[8]  See Ashley Oaks Development, Corp., 458 B.R. at 284.  See also In re

Keely and Grabanski Land P'ship, 460 B.R. 520, 536 (Bankr. D.N.D. 2011) ("If cause has been

established, the burden shifts to [d]ebtor to prove the case falls within the 'unusual circumstances'

exception to § 1112(b)(1)'s mandatory dismissal").  More specifically, § 1112(b)(2) provides:

> The Court may not convert a case under this chapter to a case under chapter 7 or
> dismiss a case under this chapter if the court finds and specifically identifies
> unusual circumstances establishing that converting or dismissing is not in the best
> interests of the creditors and the estate, **and** the debtor or any other party interest
> establishes that –
>
> > (A) there is reasonable likelihood that a plan will be confirmed within the
> > timeframes established in sections 1121(e) and 1129(e) of this title, or if
> > such sections do not apply, within a reasonable
> > period of time; **and**
> >
> > (B) the grounds for granting such relief include an act or omission of the
> > debtor other than paragraph (4)(A) –
> >
> > > (I) for which there exists a reasonable justification for the act or
> > > omission; **and**
> > >
> > > (II) that will be cured within a reasonable period of time fixed by
> > > the court.

11 U.S.C. § 1112(b)(2)(emphasis added).

---

[8]      § 1112(c) is not applicable.

In this case, the UST and the Litigating Parties argue that the Debtors' case should be dismissed pursuant to § 1112(b)(4) because cause exists on the following grounds:

(A)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B)    gross mismanagement of the estate;

. . .

(E)    failure to comply with an order of the court;

(F)    unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

. . .

(K)    failure to pay any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b)(4)(A), (B), (E), (F), and K.  The outstanding UST quarterly fees for the fourth quarter of 2016 were paid on or about April 11, 2017 – on the eve of the hearing on the Motions to Dismiss.  Accordingly, the payment of those fees, albeit untimely, moots the UST's argument under § 1112(b)(4)(F).

Based on all the evidence presented by the UST and the Litigating Parties, the testimony provided by Mr. DeWeerd, and the exhibits introduced into the record, the UST has met her burden in establishing "cause" for conversion or dismissal under § 1112(b)(4). Because "cause" for conversion or dismissal of the Debtors' case has been established on other grounds as discussed herein, the Court does not consider the UST's arguments that the Debtors have grossly mismanaged their estate at this time.

### A.    Continuing Loss and Inability to Rehabilitate

In order to establish "cause" under § 1112(b)(4)(A), a movant must demonstrate both a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.  In re Ashley Oaks Development, Corp., 458 B.R. at 285.  The first

14

hurdle to be met is that the debtor must have suffered a negative cash flow or declining asset value. Id. (citing In re Landmark Atlantic Hess Farms, LLC, 448 B.R. at 713). When examining this prong, courts often take into consideration the debtor's track record, taking into account "the financial prospects of the debtor and the financial records filed with the court." In re Paterno, 511 B.R. 62 (Bankr. M.D. N.C. 2014). "An inability on the part of the debtor to pay current expenses as they come due, combined with an absence of reliable income can satisfy this standard." Id. (citing In re Park, 436 B.R. 811, 816 (Bankr. W.D. Va. 2010)). Second, the Court must find the absence of a reasonable likelihood of rehabilitation, which is not synonymous with whether the debtor can confirm a plan, but rather whether the debtor has sufficient business prospects which can establish a "cash flow from which current obligations can be satisfied." In re Ashley Oaks Development, Corp., 458 B.R. at 285-86.

In this case, there has been a continuing loss to or diminution of the estate. In the course of a little over three months, the Court has entered three orders permitting the automatic stay to be vacated to allow mortgagees to enforce their rights with respect to the Debtors' residence, the Ohio Property, and the Woodhaven Property. The Debtors never filed a timely response to any of those motions. Moreover, two of the properties, to which there no longer is an automatic stay, are rental properties; accordingly, if the properties proceed to foreclosure, there will no longer be revenue sources coming into the Debtors' estate.

While the UST argues that the monthly operating reports that the Debtors have filed are deficient in various respects, they reflect that from November 2016 through February 2017 the Debtors have incurred a cumulative loss of approximately $1,708.00. This loss is before the Debtors made their full mortgage payments on the real estate properties.

Against this backdrop, the Debtors appear to have little prospects of rehabilitation within

the constraints of the present case.

**B. Failure to Comply With An Order of the Court**

The Debtors, who represent themselves *pro se*, have clearly had a hard time navigating through the intricacies of the requirements and rules imposed on debtors-in-possession. Even debtors who choose to represent themselves, however, are required to comply with orders of the Court. See In re DeWeerd, C/A No. 16-05655, slip op. at 8 (Bankr. D.S.C. Mar. 16, 2017) ("While Debtors are acting *pro se*, they must still abide by the court-imposed deadlines, and incur the same consequences as counsel when they have failed to do so.").

According to the Order Establishing Deadlines, there were specific "drop dead" deadlines which, if not complied with, could have triggered the automatic dismissal or conversion of the case upon the filing of an affidavit of delinquency by the UST. As set forth in more detail above, there are some deadlines which were not met as required by the Order. More specifically, the Debtors failed to file the B26 reports as required by Rule 2015.3. While they provided the UST with incomplete and inaccurate reports for two of the entities in which they hold an interest, it appears that failed to provide or file other reports for all entities in which they hold an interest greater than 20% -- even if those entities are not currently operating.[9]

Aside from those deficiencies, the Debtors also failed to provide documents or file amendments by January 24, 2017, as required by the Order Establishing Deadlines. It appears that they further failed to comply with the December 29 Order requiring the Debtors to (a) serve the Notice of Chapter 11 Bankruptcy Case as well as other documents on creditors that were not listed at the time the petition was filed and (b) file Statement of Change for the Amended Schedules.

---

[9]    Furthermore, it appears from the Credit Counseling Certificates which were filed with the Court on January 11, 2017, that the mandatory pre-petition credit counseling was not received until post-petition, thus raising the question of whether the Debtors were eligible to file for bankruptcy pursuant to 11 U.S.C. § 109.

Lastly, while the Amended Schedules were filed on December 21, 2016, the Court immediately entered a Deficiency Notice indicating that they were not signed by the Debtors, and that the deficiency had to be cured by no later than January 3, 2017.  The Debtors, however, also failed to correct that deficiency.

The Court finds that the failures to comply with the Court's orders constitute sufficient "cause" under § 1112(b).

### C.  Failure to Satisfy Timely any Filing or Reporting Requirements

While the Debtors are current in filing their monthly operating reports, those reports appear deficient in various respects and do not provide a clear picture of the Debtors' financial condition. The Debtors were informed of those deficiencies, and they indicated they would retain an accountant to help them with the bankruptcy reporting requirements.  To date, however, there is no retention application on file for the services of an accountant and the issues that have plagued the reports have not been resolved.

### D.  Exceptions to Conversion or Dismissal Under 11 U.S.C. § 1112(b)(2)

Once a finding of "cause" is made, the Court must identify "unusual circumstances establishing that converting or dismissing is not in the best interests of the creditors and the estate" for a debtor or other party in interest to successfully defend against dismissal or conversion based on cause under § 1112(b)(2).  11 U.S.C. § 1112(b)(2).  The defense of unusual circumstances can only be invoked where the debtor or other party opposing the motion also establishes that: (1) there is a reasonable likelihood that a plan will be confirmed within the time frames established in §§ 1121(e) and 1129(e) and (2) the grounds for conversion or dismissal include an act or omission, other than the cause set forth in § 1112(b)(4)(A), for which there is a reasonable justification for the act or omission, and (3) such act or omission will be cured within a reasonable period of time

17

fixed by the court.  11 U.S.C. § 1112(b)(2)(A) and (B).  See Ashley Oaks Development Corp., 458

B.R. at 284-85 (Section 1112(b)(2) is written in the conjunctive and requires a debtor to establish

unusual circumstances and satisfy the elements of § 1112(b)(2)(A) and (B)).  Although "unusual

circumstances" is not defined by the Bankruptcy Code, "courts have determined that it

contemplates conditions that are not common in most chapter 11 cases.  Such conditions must not

only be unusual, they must also demonstrate that dismissal or conversion is not in the best

interest[s] of creditors and the estate."  In re Congaree Triton Acquisitions, LLC, 492 B.R. at 855.

       After considering the evidence presented and the record of this case, the Court finds that

the Debtors have failed to demonstrate the existence of "unusual circumstances" to establish that

dismissal is not in the best interest of the creditors and the estate.

## E.  Dismissal of the Case

       Once the Court finds that cause exists to dismiss or convert the case and Debtors do not

satisfy the factors of § 1112(b)(2), the Court must decide whether conversion or dismissal is in the

best interest of the creditors.  At the hearing, the UST recommended dismissal with prejudice or

conversion rather than a dismissal which may allow the Debtors to refile *pro se*. The Litigating

Parties, however, indicated a preference for dismissal with prejudice rather than conversion to

Chapter 7, so that they could continue, among other things, their litigation and arbitration.  The

Debtors' objection focused on the dismissal of the case but expressed no preference of dismissal

or conversion to the extent the Court found that cause existed under § 1112.

       The Litigating Parties argued that the case should be dismissed with prejudice for a period

of 180 days or one year because (1) the Debtors' willfully failed to comply with the Court's orders

pursuant to § 109(g)(1); (2) the Debtors deceived the Court due to their claim of *pro se* status while

18

having attorney assistance in the case and adversary proceeding; and (3) the Debtors filed the case in bad faith.

Having considered these arguments, the Court does not believe the evidence supports a bar to any and all refilings by the Debtors, but herein conditions any refiling of a Chapter 11 case by the Debtors for a period of one (1) year upon the entry of this Order upon the requirement that any case be filed by an experienced bankruptcy attorney licensed to practice in the district in which the case is filed—a condition agreed to by the Debtors at the hearing.

In reaching this decision, the Court is mindful of the deference given to pleadings filed by *pro se* parties. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (noting that documents filed *pro se* are "to be liberally construed" and that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers" (internal citations omitted)). Here, there is no doubt that the Debtors are sophisticated individuals who frequently failed to meet deadlines and court requirements in this case. However, the Court is convinced that these failures are more attributable to a lack of counsel and the Debtors' pressured life circumstances than due to willful conduct, intentional disregard of or plain indifference to the Court's orders. While the Litigating Parties argue bad faith by the Debtors in the filing of this case, the Court cannot identify any scheme by or benefit to the Debtors in conducting this Chapter 11 case *pro se* or in the manner it was conducted. In fact, during the case, relief from the automatic stay has been granted against the Debtors' primary real estate holdings, including the Debtors' residence, in part to due to the Debtors' lack of knowledge and diligence.[10] Furthermore, while the automatic stay triggered by this case filing delayed the

---

[10]    The Court notes that conversion of the present case to Chapter 7 will not reinstate the automatic stay as to the estate property affected by these relief orders. It would be very difficult for a Chapter 7 Trustee to administer that estate property in a chapter 7 proceeding after relief has previously been granted to the mortgage creditors.

litigation in the U.S. District Court and the arbitration in Texas, these matters remain pending, and Debtors' attempt to reassert similar causes in this Court in the adversary proceeding No. 17-80030 is being dismissed. The Court further notes that the Litigating Parties had not previously acted to obtain relief from the automatic stay to continue the non-bankruptcy litigation.

While the Court is concerned with the allegations of "ghostwriting," the evidence presented at the hearing was not so certain as to establish this as grounds of bad faith. However, the Court shall retain jurisdiction in this case to inquire further regarding this concern.

Further, regarding the argument that the Debtors may be using the Chapter 11 case to disguise the improper movement of funds from LLCs they own, the evidence was not conclusive to indicate bad faith. In fact, the Debtors' repeatedly demonstrated desperation to sell the Ohio property to obtain funds to hire counsel, a fact which weighs against any allegations of improper draw down of LLC funds. For these reasons the Court declines to dismiss the Debtors' case with prejudice as to absolutely bar any type of refiling for a period of 180 days or one year.

Finally, regarding the UST's alternative recommendation for consideration of conversion of the present case, the UST relies on Debtors' estimated value of assets and liabilities, which appears to be inflated and is tied to the business litigation and value of properties on which relief from stay has been granted.[11] The Court also notes the constitution of the creditor body consists primarily of the Litigating Parties and secured creditors who have the means of protecting their interests, an observation also made by the First Movants in their Motion to Dismiss.

---

[11]    The Court notes that none of the creditors of which relief from stay has been granted filed or joined to support of conversion or dismissal with prejudice.

## <u>CONCLUSION</u>

Therefore, for these reasons, pursuant to § 1112(b) and § 105, the Court hereby dismisses the Debtors' case with prejudice for a one year period to bar any refiling of a Chapter 11 case by these Debtors unless represented at the time of filing by an attorney licensed to practice in the District in which they refile. Nevertheless, the Court retains jurisdiction to review and issue appropriate orders regarding the allegation of undisclosed attorney representation and ghostwriting.

**AND IT IS SO ORDERED.**